IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ERICK X. VÁZQUEZ-VICENTE (9),<br>OSCAR L. MENDOZA-FLORES (12).<br><br>Defendant. | CRIMINAL NO. 15-696 (PAD) |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Before the court are defendants Eric X. Vázquez-Vicente's "Motion for Acquittal Under Rule 29 F.R.C.P." (Docket No. 2106) and Oscar L. Mendoza-Flores' "Motion for Judgment of Acquittal" (Docket No. 2137), which the government opposed at Docket No. 2163.[1] For the reasons explained below, the motions are DENIED.

## I. BACKGROUND

On November 9, 2014, a grand jury returned a six-count Indictment charging defendants, and 31 other individuals of various federal offenses, including conspiracy to possess with intent to distribute controlled substances in a protected location (Count 1); aiding and abetting each other in the possession with intent to distribute heroin, cocaine base ("crack"), cocaine, and marijuana (Counts 2 to 5); and aiding and abetting to commit the crime of knowingly and intentionally possessing firearms in furtherance of a drug trafficking crime (Count 6).[2] This, as part of a drug

---

[1] Defendants requested leave to reply and two extensions of time to do so (Docket No. 2171 and 2177), which the court granted (Docket Nos. 2172 and 2178). However, no replies were filed.

[2] Count 6 charged defendants and 29 other individuals. Co-defendants Gerome Malavé-Guzmán (26) and Mercedes

trafficking organization ("DTO") that operated at the Luis Muñoz Morales and Brisas de Cayey Public Housing Projects in the Municipality of Cayey, and other areas within and near that Municipality in Puerto Rico. All defendants, except for Vázquez (a/k/a Erick Chino) and Mendoza (a/k/a Luiggi) pleaded guilty.

On May 3, 2019, after thirty-two days of trial, a jury found: (i) Vázquez guilty of Count Six (possession of firearm in furtherance of a drug trafficking crime) and not guilty as to the remaining counts (Docket No. 2042); and (ii) Mendoza guilty of Counts One, Two, Four, Five and Six, but not guilty in connection with Count Three (possession with intent to distribute crack) (Docket No. 2043). Finally, Vázquez and Mendoza moved for judgment of acquittal under Fed. R. Crim. P. 29.

## II.    STANDARD OF REVIEW

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c). In addressing a motion under this rule, the court must view "the evidence in the light most flattering to the jury's guilty verdict, [and] assess whether a reasonable factfinder could have concluded that the defendant was guilty beyond a reasonable doubt." United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008). The court must "not assess the credibility of a witness, as that is a role reserved for the jury. Nor [it] need[s] to be convinced that the government succeeded in eliminating every possible theory consistent with the defendant's innocence." United States v. Peña-Santo, 809 F.3d 686, 696 (1st Cir. 2015). "Rather, [it] must decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the

---

Vega-Vázquez (33) were not included in Count 6 (Docket No. 3 at p. 20).

charged crime, even if that conclusion is not inevitable." United States v. Santos-Soto, 799 F.3d 49, 57 (1st Cir. 2015). "Testimony from even just one witness can support a conviction." United States v. Alejandro-Montañez, 778 F.3d 352, 357 (1st Cir. 2015). Accordingly, the "verdict must stand unless the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime beyond a reasonable doubt." Santos-Soto, 799 F.3d at 57.

### III. DISCUSSION

**A. Vázquez**

Vázquez alleges that the verdict is inconsistent because he was convicted of Count 6 (possession of a firearm in furtherance of a drug trafficking crime) but acquitted in all of the drug counts (Docket No. 2106, pp. 2, 4). He argues the government failed to prove a nexus between the drug crimes charged and the firearms attributed to him, and that considering all evidence in the light most favorable to the verdict the evidence was insufficient for a rational jury to find him guilty of Count 6. Id. at 9.[3]

First, a verdict inconsistency by itself is not a sufficient basis for vacating a conviction. In United States v. López, 944 F.3d 33, 41 (1st Cir. 1999), the First Circuit explained that:

> [v]erdict inconsistency does not indicate that the government necessarily failed to prove an essential element of its case beyond a reasonable doubt.... We cannot necessarily assume[ ] that the acquittal ... was proper—the one the jury really meant. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on

---

[3] Additionally, Vázquez challenges the jury instruction regarding Count 6 (Docket No. 2106, pp. 7-9). But the challenge is on the language included in the *initial proposed* jury instructions that the court filed in preparation for the charging conference (Docket No. 2002). This initial draft was thoroughly discussed with the parties at the conference and modified. Prior to instructing the jury, the court made revisions to reflect the correct specification of the controlled substances (Docket No. 2041, p. 2)(specifying edits). The corrections were cleared with all counsel and filed at Docket No. 2040. In the end, the instruction the court used is *precisely* the instruction Vázquez claims the court should have used.

> [one] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense. As long as the trial and appellate courts are convinced on independent review that there was sufficient evidence to sustain a rational verdict of guilt beyond a reasonable doubt, the defendant is properly protected against any risk of injustice resulting from jury irrationality. López, 944 F.3d at 41 (internal citations omitted).

To this end, a violation of Section 924(c)(1) requires as a predicate the commission of a crime of violence or a "drug trafficking crime," for which a defendant may be prosecuted in a court of the United States. 18 U.S.C. 924(c)(1). The government must prove the requisite predicate beyond a reasonable doubt as an element of the Section 924(c) offense. It is unnecessary, however, that the defendant be convicted of, or even charged with, the underlying criminal offense. In fact, a defendant may be convicted for possession of a weapon in furtherance of a drug trafficking crime under Section 924(c) even if he is *acquitted* of the underlying drug possession crime, as long as there is "sufficient evidence to sustain a rational verdict of guilty on both counts." United States v. Figueroa-Encarnación, 343 F.3d 23, 30 & n.4 (1st Cir. 2003); United States v. Crump, 120 F.3d 462, 466 (4th Cir. 1997)("In accordance with the views of all the circuits considering the question, we hold that a defendant's conviction under § 924(c)(1) does not depend on his being convicted – either previously or contemporaneously – of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt."); United States v. Frayer, 9 F.3d 1367, 1372 (8th Cir.1993)(requiring "only that a defendant carry a firearm in connection with a drug crime; it is not necessary that he be convicted of the underlying drug offense" in order to be convicted under Section 924(c); United States v. Laing, 889 F.2d 281, 288-289 (D.C.Cir. 1989), *cert. denied*, 494 U.S. 1069, 110 S.Ct. 1790 (1990)(rejecting claim of inconsistent verdicts where defendant was convicted of offense of carrying a firearm in relation to a drug trafficking offense but acquitted of underlying drug

trafficking offense). Because the acquittal of the predicate offenses does not preclude the Section 924 conviction, Vázquez' contention fails.

Second, the government introduced sufficient evidence of a nexus between the firearms attributed to Vázquez and the drug crimes charged, and to sustain Vázquez' conviction beyond a reasonable doubt. Two cooperating witnesses, Edgardo Ramos-Meléndez and Juan Carlos Muller, members of the DTO in question: (i) described the *modus operandi* of the DTO here;[4] (ii) related the means by which Vázquez, Mendoza and their co-conspirators would further and accomplish the object of the conspiracy; (iii) explained the manner in which the DTO sold heroin, crack, cocaine, marijuana and prescription pills for financial gain and profit, giving an account of a well-structured organization with members performing different roles (including facilitators, sellers, runners, enforcers, drug point owners and leaders);[5] (iv) identified the members of the DTO, including Vázquez and Mendoza; (v) disclosed how the drugs were prepared for sale; (vi) expressed that some members of the DTO possessed firearms of different brands and calibers including machineguns in furtherance of the conspiracy to sell drugs; and (vii) provided a rundown of how different gangs interacted with the DTO.[6]

Along the same line, the witnesses spoke about issues between the DTO and the organization's enemies; shootings in which defendants participated to protect the DTO's drug trafficking business; their work in the "tables;" and the tally or accounting of the controlled

---

[4] See, Transcripts of Proceedings at Docket Nos. 1844-1847, 1849, 1860, 1862, 1864, 1874, 1879, 1886 for the testimony of Ramos-Meléndez and 1903, 1931 for the testimony of Muller.

[5] Docket No. 1846 at p. 76.

[6] See, e.g. Docket No. 1844 at p. 26, Docket No. 1903 at p. 48-49, 55-59, 64-65.

substances.[7] Their testimony was corroborated with evidence of controlled substances, drug packaging paraphernalia, radio scanners, firearms and ammunition, and drug ledgers, that were seized in the areas that the DTO controlled. And Ramos-Meléndez testified that he knew Vázquez since he was eight years old and confirmed that Vázquez: (i) had connections for weapons and drugs; (ii) was a drug point owner and a leader; and (iii) carried weapons. "He always had a weapon," according to Ramos-Meléndez.[8] Likewise, he identified Mendoza as a runner and enforcer of the DTO who also sold drugs at the drug point. See, Docket No. 1846 at p. 4.

Vázquez questions the sufficiency of the evidence claiming that: (i) photographs of weapons obtained from a Facebook account allegedly belonging to him, are not a criminal act; (ii) there was no showing that he had used these weapons in the drug trafficking charged; (iii) evidence did not corroborate the testimony of Puerto Rico Police officers or the theory that the radio in the vehicle he was driving on the day of his arrest had been changed from another model and had a compartment to carry weapons; (v) the video the government presented did not show that he was part of a shooting incident; and (vii) the mere presence of a firearm in an area where a criminal act occurs is not sufficient to support a conviction under Count 6 (Docket No. 2106, pp. 4-5). But as is apparent from the summary of the testimony of the cooperating witnesses, this was not the only evidence against Vázquez.

---

[7] Muller explained that a table is the place drugs are processed. See, Docket No. 1903. He testified that he saw Vázquez in the heroin table and Mendoza in the tables. Id. at pp. 49, 66, 87, 93.

[8] During his testimony, Ramos-Meléndez pointed out that as a drug-point owner, Vázquez had a role in managing people. In particular, he would "make decisions and give instructions regarding who could be armed at the housing project, who could sell, who could be a lookout, who could have a long weapon at that time, or other weapons, such as a revolver or pistol[,]" and had persons under his command. See, Docket No. 1846 at p. 77. He testified that he observed Vázquez carrying firearms for watching out for his security and for each member of the housing project, and of the organization. Id. at pp. 12-13, 17, 20. He also saw Mendoza-Flores carrying firearms. Id. at p. 13 and 17.

Finally, Vázquez challenges a video where he is shown receiving a firearm in a location where a shootout occurs, contending it was not included in the government's Rule 12 designation (Docket No. 2106, p. 5). This matter was extensively discussed out of the presence of the jury during trial (Docket Nos. 1903, 104, 1920, 1931 and 1932), and contrary to Vázquez' argument, the government did include the video in its designation. Further, the video – albeit with a different resolution – was provided in discovery at the beginning of the case. In January 2019, however, the government obtained and produced more footage and still photographs of the video, and on March 1, 2019, disclosed an even longer version of the video with a better resolution. In the "new" version, Vázquez appears in possession of a firearm and interacting with members of the DTO in a bar named "El Paraiso Sport Bar" at Cercadillo ward.

Against this background, Vázquez claimed he was not in the first version of the video or in the longer footage obtained in January 29, or at least it was not clear it was him, but that he saw himself on the version of the video produced on March 1, as it was "much better video" and "a quality video." (Docket No. 1903 at p. 6). Because of this, he challenged the latest version of the video alleging that it was untimely produced and, thus, prejudicial. In the alternative, he requested that the plea offer tendered by the government before trial be reinstated.

After considering the parties' arguments, the court overruled Vázquez' objection, explaining that the video produced on March 1, was not entirely new, as Vázquez claimed. Id. at p. 13. And there is no need to deviate from that ruling. See, United States v. Beeler, 62 F.Supp.2d 136, 148149 (D.Me. 1999)(admitting enhanced surveillance videotape that was shown to be accurate and presented substance of original videotape in a larger, clearer, and easier to view format); Barnes v. State, 858 A.2d 942, 944 (Del. 2003)(no error to admit convenience store's time-lapse surveillance

videotape of armed robbery that had been converted to run at normal speed); People v. Armijo, 179 P.3d 134 (Colo App. 2007)(rejecting defendant's contention that he was prejudiced in not receiving a *real-time version* of the tape that was played to the jurors on the last day of trial from the prosecutor, or that he relied on the quality of the original videotape in preparing his defense, as the version he received in discovery was a time-lapse videotape on which the people appeared to be moving faster that they in fact were moving).

### B. Mendoza[9]

The court need not rehearse the evidence to conclude that there was more than sufficient evidence for a reasonable jury to find Mendoza guilty as it did. The evidence presented not only identified him as a member of the drug organization, but also shed light as to his role, how he moved up in the hierarchy after gaining the trust of the leaders of the organization, the acts to protect himself and the members of the drug organization, how he assisted other members in the distribution of the controlled substances, and how he used a firearm as part of the drug trafficking activities. And other than generalities, Mendoza does not explain how all this evidence is insufficient as a matter of law to support his conviction.

Mendoza questions the admission of evidence about a robbery in which according to a witness, Muller-Vázquez and Mendoza participated and of shootings where Muller and Mendoza were involved with, claiming the acts were not related to or linked to the conspiracy (Docket No. 2137, p. 2). Muller testified that: (i) the DTO's leader ("Masimbo") gave him information about places Muller could rob; (ii)Muller would do the job and give Masimbo a cut of the bounty; and

---

[9] In his motion, Mendoza "fully adopts" the arguments raised in Vázquez' Rule 29 motion (Docket No. 2137, p. 10). In the absence of substantive elaboration, this remark alone is insufficient to cover Mendoza for arguments applicable to Vázquez. See, United States v. Bennett, 75 F.3d 40, 49 (1st Cir. 1996)(in the context of Fed. R. App. P. 28(i), counsel should be aware of the need to connect the arguments adopted with the specific facts pertaining to the movant).

(iii) the money would be used to buy drugs and weapons for the DTO (Docket No. 2137, p. 4). And the shooting involved an enemy from another gang. The link with the conspiracy was thus apparent. Mendoza states the cooperating witnesses "lacked any indicia of reliability." Id. at p. 3. But that was for the jury to decide.[10]

Mendoza argues that the evidence presented against Vázquez had a spillover effect on him (Docket No. 2137, p. 7). The argument is not persuasive. The jury found Vázquez guilty of Count Six and not guilty as to the remaining drug counts (Docket No. 2042). And it found Mendoza guilty of Counts One, Two, Four, Five and Six, but not guilty as to Count Three (possession with intent to distribute cocaine base "crack" (Docket No. 2043)). If anything, the verdict reflects a careful dissection of the evidence as it applied to each defendant, demonstrating the jury's ability to segregate the evidence and carefully weigh it.

## IV. CONCLUSION

For the reasons stated, defendants' motions for judgment of acquittal are DENIED.

**SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of December, 2019.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
U.S. DISTRICT JUDGE

---

[10] On his subject, Mendoza complains that the court did not admit impeaching evidence of Ramos Meléndez' untruthfulness (Docket No. 2137, p. 2). Yet he acknowledges that there was evidence that the cooperating witnesses admitted to lying in the past to government agents and employees for their own benefit. Id. at 3. In the case of Ramos Meléndez, Mendoza refers to lies in a sworn statement before a District Attorney and a phone call between Ramos Meléndez and that witness' mother where she accuses her son of lying. Id. at 7. The jury heard this evidence, which Mendoza was able to use in an attempt to discredit the government's case.